

Cite as 2013 Ark. App. 705

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-13-494

| | |
|---|---|
| THE LUCCI CORP.<br>APPELLANT | **Opinion Delivered** December 4, 2013 |
| V. | APPEAL FROM THE BENTON<br>COUNTY CIRCUIT COURT<br>[NO. CV-11-2229] |
| BREAUX MANUFACTURING CO.,<br>INC.<br>APPELLEE | HONORABLE JOHN R. SCOTT,<br>JUDGE |
| | REVERSED AND REMANDED |

## BRANDON J. HARRISON, Judge

The Lucci Corp. d/b/a Northeast Products (NEP) appeals the Benton County Circuit Court's grant of summary judgment in favor of Breaux Manufacturing Co., Inc. NEP argues that the court applied Ark. Code Ann. § 16-56-105's three-year limitations period when it should have applied Ark. Code Ann. § 4-2-725's four-year limitations period. The three-year period applies to oral contracts, including contracts for the sale of services. The four-year period applies to sale-of-goods transactions. NEP characterizes its prior business history with Breaux as involving the sale of goods. Breaux characterizes the same relationship as being the result of an oral-services contract between the parties. Because a genuine issue of material fact exists in this case regarding the characterization of the parties' business history, we reverse the grant of summary judgment and remand for further proceedings.

In 1981, Doug Speight incorporated Breaux to sell blaze-orange hunting vests to Wal-Mart. In 1985, Peter Luccisano established NEP to manufacture several pieces of hunting

gear, including the "Therm-A-Seat," the particular product involved in this case. By 1991, Speight had also established Mid-America Sales, Inc., a contract manufacturing representative firm.

Sometime in the mid-1990s, Speight met Luccisano while Speight worked as a contract manufacturer's representative for Mid-America Sales. Speight and Luccisano made an oral contract whereby Luccisano would pay a ten-percent commission to Speight on sales of the Therm-A-Seat. According to Speight's deposition testimony, the agreement was actually between Mid-America Sales and NEP, not Speight personally and NEP.

During NEP and Mid-America's relationship, NEP approached Mid-America and asked it to engage Wal-Mart about whether Wal-Mart would sell NEP's product. Mid-America informed NEP that Wal-Mart declined the invitation to work with NEP. As a work-around, Mid-America decided to combine NEP's product with Breaux's Wal-Mart vendor number so that NEP's products could reach Wal-Mart's shelves. In this arrangement, Wal-Mart sent purchase orders to Breaux seeking Breaux and NEP products. Wal-Mart's payments would then be made directly to Breaux. To fulfill Wal-Mart's purchase orders, Breaux sent its own purchase orders to NEP. NEP would then fill and ship the orders directly to the addresses that Breaux placed on the Breaux-generated purchase orders.

NEP required payment within thirty days of invoicing Breaux. If an issue with payment arose, then NEP had to address it with Breaux, not Wal-Mart, although the ship-to address was always one that Wal-Mart designated. Once Breaux received payment for the goods from Wal-Mart, Breaux would send NEP a check for the invoiced amount. NEP

would then send Mid-America a commission check. Eventually, Breaux began deducting Mid-America's commission from NEP's payment before the invoiced amount was remitted because NEP consistently paid the commission late. Around 2007, NEP's invoiced amounts to Breaux became past due by approximately 120 days. NEP stopped shipping goods to Breaux.

In 2011, NEP sued Breaux, alleging breach of contract for the sale of goods pursuant to Ark. Code Ann. § 4-2-725. After answering the complaint, Breaux moved for summary judgment, arguing that the three-year statute of limitations in Ark. Code Ann. § 16-56-105 time-barred NEP's complaint. Breaux's motion challenged NEP's attempt to characterize their repeated business deals as a contract for the sale of goods under Arkansas's commercial code. Breaux argued that the parties had operated under a sale-of-services contract; therefore, a three-year, not the commercial code's four-year, limitations period applied. NEP responded and filed a cross-motion for summary judgment. The gist of NEP's efforts was that no genuine issue of material fact existed on the points that the parties' history was a sale-of-goods relationship and that its complaint was not time-barred when the proper statute of limitations was applied. The circuit court granted summary judgment to Breaux and dismissed NEP's complaint as time-barred under section 4-2-725. NEP asks us to reverse that decision.

A circuit court may grant summary judgment when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Hardin v. Bishop*, 2013 Ark. 395, at 6–7. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and

SLIP OPINION

SLIP OPINION

demonstrate the existence of a material issue of fact. *Id*. at 7. We determine if summary judgment was appropriate based on whether the evidence presented by the moving party in support of the motion leaves a material fact unanswered. *Id*. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*.

We reverse the circuit court's grant of summary judgment and remand for proceedings consistent with this opinion because a material fact question exists on whether the parties' transactions embodied a sale-of-goods relationship versus an oral sale-of-services contract. Breaux's motion set forth proof that arguably supports Breaux's contention that its relationship with NEP embodied a contract for the sale of services. Likewise, NEP provided proof tending to show that the relationship between it and Breaux was based on a contract for the sale of goods.

For example, Breaux noted, among other things, that an affidavit by Luccisano stated: "The plaintiff, Northeast Products (NEP) asked C. Douglass Speight, its Wal-Mart sales agent to present the items to Wal-Mart. . . . Speight as NEP's sales representative continually advised NEP that its request for direct sales to Wal-Mart was denied." This recitation is not conclusive enough to support summary judgment. The affidavit refers to Speight, not Breaux or Mid-America. But Speight owns Breaux and Mid-America, and the affidavit does not identify in what capacity Speight acted. So the affidavit does not definitively support Breaux's contention that Breaux was the sales-representative company for NEP. The Speight reference could have, for example, referred to Mid-America. NEP provided deposition testimony by

SLIP OPINION

Speight where Speight indicated that Mid-America was the sales representative of NEP, not himself personally. The bottom line is whether Speight's conduct related to Therm-A-Seat sales occurred in his capacity as a Mid-America sales representative or a Breaux representative is unclear. And that Mid-America brokers deals between manufactures and merchants arguably weakens Speight's assertion that Breaux, a manufacturer, was a sales representative for NEP. On this record, we have concluded that a judgment as a matter of law is premature.

Reversed and remanded.

PITTMAN and WYNNE, JJ., agree.

*Snively Law Firm*, by: *Nick Churchill*, for appellant.

*Reece Moore Pendergraft LLP*, by: *Timothy C. Hutchinson*, for appellee.